IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DR. TAYAB WASEEM,

       Plaintiff,

    v.                                      Action No. 2:24cv36

STABILITY AI, INC. and
STABILITY AI LTD.,

       Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

By order of reference dated August 2, 2024, ECF No. 38, and pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, this case was referred to the undersigned United States Magistrate Judge for a report and recommendation on defendants', Stability AI, Inc. and Stability AI Ltd. (collectively, the "Stability Defendants"), motion to dismiss for lack of personal jurisdiction and failure to state a claim, ECF No. 32.

For the reasons below, the undersigned **RECOMMENDS** that the Stability Defendants' motion to dismiss for lack of personal jurisdiction be **GRANTED,** the motion to dismiss for failure to state a claim be **DENIED AS MOOT,** and that this case be **DISMISSED WITHOUT PREJUDICE.**

### I.  PROCEDURAL HISTORY

On January 16, 2024, plaintiff, Dr. Tayab Waseem ("Dr. Waseem"), filed a three-count complaint against Mohammad Emad Mostaque ("Mostaque") and the Stability Defendants.  ECF No. 1.  On May 20, 2024, the Stability Defendants moved to dismiss, ECF No. 22, and filed an

accompanying memorandum of law in support, ECF No. 23.  On June 4, 2024, Dr. Waseem amended his complaint.[1]  Am. Compl., ECF No. 30.  The amended complaint alleges breach of an oral employment contract between Dr. Waseem and the Stability Defendants relating to equity compensation Dr. Waseem was supposed to receive (count I), and unjust enrichment (count II) and *quantum meruit* (count III), each in the alternative to the other counts.  *Id.* ¶ 2.  On June 18, 2024, the Stability Defendants moved to dismiss the amended complaint, ECF No. 32, and filed an accompanying memorandum of law in support, Mem. of Law in Supp. of Defs.' Mot. to Dismiss, ECF No. 33 ("Defs.' Mem.").  In their motion, the Stability Defendants argue that the Court should dismiss the complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure because they are not subject to personal jurisdiction in Virginia.  Defs.' Mem. 8–18.  They also seek to dismiss count I, breach of contract, and count II, unjust enrichment, for failure to state a claim under Rule 12(b)(6).  *Id.* at 18–23, 25–26.  Lastly, the Stability Defendants urge the Court to "severely" limit count III, *quantum meruit*.  *Id.* at 25–27.  On July 2, 2024, Dr. Waseem filed an opposition to the motion to dismiss.  Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 34 ("Pl.'s Mem.").  The Stability Defendants replied in support of their motion on July 8, 2024.  ECF No. 35.

On October 3, 2024, the undersigned held a hearing on the motion.  ECF No. 42.  George Bowles, Esquire, and Adam Trigg, Esquire, represented Dr. Waseem and Robert Tata, Esquire, Chad Albert, Esquire, and Steven Kessler, Esquire, represented the Stability Defendants.  As such, the motion has been fully briefed and is now ripe for review.

---

[1] On May 20, 2024, Mostaque filed a separate motion to dismiss for failure to state a claim and lack of personal jurisdiction.  ECF No. 17.  On June 4, 2024, Dr. Waseem and Mostaque filed a stipulation of voluntary dismissal of the claims against Mostaque with a proposed order.  ECF No. 29.  Dr. Waseem filed his amended complaint, which names only the Stability Defendants as defendants.  ECF No. 30, at 1.  The Court found that the stipulation was moot and ordered that the amended complaint be the operative complaint.  ECF No. 31, at 2.

## II.   FACTUAL BACKGROUND[2]

Stability AI Ltd. is both incorporated in and has its principal place of business in London, England. Am. Compl. ¶ 5.  In October 2020, Mostaque, the sole director and majority shareholder of Stability AI Ltd., incorporated Stability AI, Inc., in Delaware and transferred his ownership interest in Stability AI Ltd. to Stability AI, Inc. *Id.* ¶¶ 5, 31.  Stability AI, Inc.'s principal place of business is London, England. *Id.* ¶ 4.  During the relevant period, Mostaque owned about 70% of the equity of Stability AI, Inc., while Cyrus Hodes ("Hodes"), a co-founder, owned 15%, and an additional unnamed investor owned the remaining 15%. *Id.* ¶ 31.   Mostaque was the CEO and sole director of both companies, and the two companies "operated interchangeably as one entity and agents of each other."[3] *Id.* ¶¶ 4–5, 31–32.  "Stability AI's business plan was to develop generative AI models for a wide array of AI products." *Id.* ¶ 18.  Mostaque spearheaded the first of these projects—the Collective & Augmented Intelligence Against COVID-19 ("CAIAC")—an initiative to "build a platform using AI to guide COVID-19 decision-making." *Id.* ¶¶ 12, 18.  The Stability Defendants used "ChatGPT to develop these generative AI models in the fight against COVID-19." *Id.* ¶ 18.

Dr. Waseem, a resident of Virginia at all relevant times, is a "computational biologist." *Id.* ¶ 1, 3.  He holds two bachelor's degrees from Virginia Commonwealth University—one in Biology and another in Bioinformatics—and a Ph.D. in Immunology and an M.D., both from Eastern

---

[2] The facts discussed herein are drawn from the amended complaint.  ECF No. 30.  When ruling on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

[3] The amended complaint does not allege where Mostaque was physically located during the relevant period.

Virginia Medical School. *Id.* ¶ 9. In 2020, Dr. Waseem led a task force sponsored by the White House Office of Science and Technology Policy to use artificial intelligence to respond to the COVID-19 pandemic. *Id.* ¶ 11. Although it is unclear when or how, it was through his work on this task force that Dr. Waseem "connected with Mostaque[.]" *Id.* ¶ 12. The two discussed "joining forces to work on AI[.]" *Id.* ¶ 13. At the time, Mostaque had formed Stability AI Ltd. in the United Kingdom, and asked Dr. Waseem if he preferred to work for that entity or CAIAC. *Id.* Dr. Waseem elected to work for Stability AI Ltd. and requested a leadership position. *Id.* In late July 2020, Dr. Waseem began working for Stability AI Ltd. as its Chief Scientific Officer, and the parties "agreed and expected that" Dr. Waseem would work from his home in Virginia. *Id.* ¶¶ 13–14. Initially, the Stability Defendants were to provide Dr. Waseem with cash compensation, but when the cash flow tightened, Mostaque "assured" Dr. Waseem that he would instead receive equity compensation. *Id.* ¶ 17. As a result of taking on this role, Dr. Waseem delayed taking his medical board exams, and he and Mostaque agreed that Dr. Waseem would take a leave of absence to complete medical school one year later. *Id.* ¶ 14.

Dr. Waseem received a Stability AI[4] email address to which the Stability Defendants, through Mostaque and Hodes, sent "thousands of electronic communications" relating to Dr. Waseem's work. *Id.* ¶ 15. He also participated in daily "stand up" meetings with Mostaque and Hodes to discuss the management of the company. *Id.* Dr. Waseem managed contract workers, wrote grant proposals and applications, and spoke at conferences on behalf of the Stability Defendants. *Id.* ¶¶ 19, 25. Dr. Waseem used personal funds to pay company expenses, including contract workers, and the Stability Defendants reimbursed him for these expenses in or around

---

[4] In his amended complaint, Dr. Waseem refers to the Stability Defendants as "Stability AI" without differentiating between Stability AI, Inc. and Stability AI Ltd. To avoid confusion, when reciting the facts in the amended complaint, the Court will do the same.

November 2021. *Id.* ¶ 26. Moreover, Stability AI used Dr. Waseem's Virginia address "as its U.S. corporate headquarters for a period of time to maintain U.S. bank accounts[,]" and on third-party contracts and grant applications. *Id.* ¶ 16. Stability AI publicly held Dr. Waseem out as its Chief Scientific Officer both on grant applications and investor materials. *Id.* ¶ 23. For example, in an "investment pitch deck" prepared by Dr. Waseem, Mostaque, and Hodes, Dr. Waseem was listed as one of Stability AI's leaders alongside Mostaque and Hodes. *Id.* ¶ 28.

At "various times over the course of several months" Dr. Waseem and Mostaque discussed Dr. Waseem receiving equity compensation for his work. *Id.* ¶ 33. These discussions culminated in a March 2021 Zoom call, attended by Dr. Waseem, Mostaque, and Hodes, during which Mostaque offered, and Dr. Waseem accepted, 10% equity in Stability AI, Inc. as compensation. *Id.* The parties, however, never reduced this agreement to writing.[5] Due to cash flow constraints, the Stability Defendants fell behind on payments to outside counsel and were "unable to direct current corporate counsel to perform any further work[.]" *Id.* ¶ 35. As a result, Mostaque told Dr. Waseem that they "would wait to formally document [his] equity interest until the company received additional financing." *Id.*

In July 2021, Dr. Waseem took a leave of absence to complete medical school. *Id.* ¶ 38. On or about October 3, 2022, Dr. Waseem and Mostaque spoke on the telephone about Dr. Waseem's 10% equity interest in Stability AI, Inc., which Mostaque did not dispute and agreed to "follow up on it and Dr. Waseem's continued role with Stability AI." *Id.* ¶¶ 33, 41. Communications between the two broke down. *Id.* ¶ 42. Dr. Waseem repeatedly attempted to contact Mostaque, including through a November 2022 email in which Dr. Waseem again

---

[5] While Dr. Waseem alleges that Mostaque and Hodes confirmed this agreement "in written messages to each other[,]" because the parties have not engaged in discovery, he does not possess those writings. Am. Compl. ¶ 34.

discussed the equity compensation agreement. *Id.* Dr. Waseem engaged counsel after his attempted communications went unanswered. *Id.* In January 2023, Stability AI denied the existence of any contract granting Dr. Waseem equity in the company and claimed that Dr. Waseem was never an employee of Stability AI, but rather he agreed to work as an unpaid intern. *Id.* ¶ 43.

## III.  DISCUSSION

### A.  Legal Standard

Rule 12(b)(2) permits a defendant to move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). After a defendant challenges jurisdiction, a plaintiff "bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *see also Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018). A plaintiff's burden of persuasion, however, depends on the procedural posture of the case and the evidence the parties have presented to the Court. "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction."[6] *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *see also Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). The Fourth Circuit has likened this analysis to the plausibility standard that governs motions to dismiss for failure to state a claim under Rule 12(b)(6). *Hawkins*, 935 F.3d at 226. Thus, at this point, the Court "must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* (citing *Sneha Media & Ent., LLC*, 911 F.3d at 196–97). In doing so, the Court must draw all

---

[6] Once the parties have a "fair opportunity to develop the record regarding personal jurisdiction," however, the plaintiff must carry the burden to establish personal jurisdiction by a preponderance of the evidence." *Sneha Media & Ent., LLC*, 911 F.3d at 197; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

reasonable inferences, and resolve all factual disputes, in favor of the party asserting jurisdiction. *Id.* (citing *Universal Leather*, 773 F.3d at 560).

**B.    Principles that apply generally to personal jurisdiction.**

A federal district court may exercise personal jurisdiction over a foreign corporation only if (1) the forum's long-arm statute authorizes such jurisdiction, and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long arm statute, Va. Code Ann. § 8.01-328.1 (2023),[7] authorizes courts to exercise personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause, *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020), and thus "the statutory inquiry merges with the constitutional inquiry[,]" *Consulting Eng'rs*, 561 F.3d at 277 (citations omitted).

Constitutional due process requires a foreign corporation to have sufficient "minimum contacts" with Virginia such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted).  The "primary focus" of the constitutional inquiry is the nature and extent of "the defendant's relationship to the forum State."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017).  The Supreme Court has recognized two kinds of personal jurisdiction:  general and specific.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).  General personal jurisdiction over a defendant exists when her contacts "are so continuous and systematic as to render [the defendant] essentially

---

[7] In relevant part, Virginia's long-arm statute authorizes the exercise of personal jurisdiction in certain enumerated circumstances, including "over a person[] who acts directly . . . as to a cause of action arising from the person's [t]ransacting any business in this Commonwealth[.]"  Va. Code § 8.01-328.1(A)(1) (2023).

at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted).

Absent "continuous and systematic" contacts, a court looks to whether specific jurisdiction exists by determining whether a plaintiff's claims "arise out of or relate to" a defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citation omitted). This analysis requires a court to consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003); *see also Universal Leather*, 773 F.3d at 559. Only if a court concludes that the purposeful availment prong is satisfied does it need to address prongs two and three.[8] *Consulting Eng'rs*, 561 F.3d at 278. For the reasons noted below, Dr. Waseem falters on the first prong.

C.     **The Court cannot exercise personal jurisdiction over the Stability Defendants because they have not purposefully availed themselves of the privilege of conducting business activities in Virginia.**

The first prong of the specific jurisdiction analysis requires a defendant to take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In making this determination, courts look to whether "the defendant's conduct and connection with the forum State are such that he should

---

[8] Although the Stability Defendants argue that they are not subject to general personal jurisdiction in Virginia, Defs.' Mem. 8–9, Dr. Waseem, argues only that he "has established a prima facie case . . . that the Stability Defendants are subject to *specific jurisdiction* in Virginia," Pl.'s Mem. 9 (emphasis added). Because Dr. Waseem neither argues for nor do the facts support a claim of general personal jurisdiction over the Stability Defendants, the Court will confine its analysis to specific personal jurisdiction.

reasonably anticipate being haled into court there." *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). The relationship between a defendant and the forum state, "must arise out of contacts that the 'defendant *himself*' creates[.]" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475). The exercise of personal jurisdiction is proper "when the contacts relate to the cause of action and create a *substantial connection* with the forum state." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000) (emphasis added). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

The Fourth Circuit has identified several nonexclusive factors for courts to consider when determining whether the purposeful availment requirement is satisfied, including: (1) "whether the defendant maintains offices or agents in the forum state," (2) "whether the defendant owns property in the forum state," (3) "whether the defendant reached into the forum state to solicit or initiate business," (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state," (5) "whether the parties contractually agreed that the law of the forum state would govern disputes," (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship," (7) "the nature, quality and extent of the parties' communications about the business being transacted," and (8) "whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs*, 561 F.3d at 278 (citations omitted); *see also Universal Leather*, 773 F.3d at 560.

At the outset, the mere contracting with a resident of the forum state does not itself subject a defendant to personal jurisdiction. *Burger King*, 471 U.S. at 478; *Chung v. NANA Dev. Corp.*,

783 F.2d 1124, 1127–28 (4th Cir. 1986). Instead, because the minimum contacts requirement "is not susceptible of mechanical application," *Consulting Eng'rs*, 561 F.3d at 278 (citing *Int'l Shoe*, 326 U.S. at 319), a court's analysis is "flexible" and "proceeds on a case-by-case basis," considering the "qualitative nature of each of the defendant's connections to the forum state[,]" *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301–02 (4th Cir. 2012).

Dr. Waseem argues that the first, third, fourth, sixth, and eighth factors weigh in favor of the Court exercising personal jurisdiction over the Stability Defendants. Pl.'s Mem. 9. Looking to the nature and quality of the Stability Defendants' contacts with Virginia, the Court concludes that Dr. Waseem has not made a *prima facie* showing that they purposefully availed themselves of the privilege of doing business in Virginia. It is undisputed that the Stability Defendants do not own property in Virginia, did not contractually agree for Virginia law to govern disputes with Dr. Waseem, and did not make in-person contact in Virginia about the business relationship. Furthermore, Dr. Waseem does not allege that the Stability Defendants maintain officers or agents in Virginia other than himself. Thus, the first, second, fifth, and sixth factors weigh against the exercise of personal jurisdiction. The Court will address the remaining factors in turn.

In determining whether the Stability Defendants "reached into the forum state to solicit or initiate business," *Consulting Eng'rs*, 561 F.3d at 278 (citation omitted), as it relates to their relationship with Dr. Waseem, an important factor is "whether the defendant[s] initiated the business relationship in some way," *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002) (citation omitted). Relative to this third factor, Dr. Waseem alleges that the Stability Defendants, through Mostaque, "repeatedly contacted Dr. Waseem in Virginia through messaging apps and video conferences to encourage and convince Dr. Waseem to work for [them] and enter into the

10

contract alleged [in the complaint.]" Am. Compl. ¶ 7. Thereafter, he entered the oral contract with the Stability Defendants while he was in Virginia and was to perform said contract in Virginia. *Id.*

Accepting the allegations as true and drawing all inferences in favor of Dr. Waseem, for the reasons below, the Court finds that the solicitation factor is not dispositive. *See Berry v. Secure Relationship, LLC*, No. 2:22cv2815, 2022 WL 16720115, at *4 (D.S.C. Nov. 4, 2022). Importantly, "[t]he solicitation factor is significantly outweighed when the plaintiff does not allege that '[the employer] recruited h[im] for h[is] job *because* []he resided in [the forum state].'" *Id.* (quoting *Perry v. Nat'l Ass'n of Home Builders of the United States*, No. TDC-20-0454, 2020 WL 5759766, at *4 (D. Md. Sept. 28, 2020)); *see also Berry*, 2022 WL 16720115, at *5 (noting that "'even if defendants were fully aware that the plaintiff had relocated to [the forum state], this is insufficient to cause defendants to be subject to the jurisdiction of [that state's] courts[] when there was no suggestion that the contract specified where the work was to be performed'" (quoting *Higgins v. Catalyst Exhibits*, No. 9:20cv3424, 2021 WL 3886597, at *4 (D.S.C. Aug. 31, 2021))).

The Court finds the analysis in *Berry v. Secure Relationship, LLC* instructive. 2022 WL 16720115. There the plaintiff, a resident of South Carolina, sued the defendant, a foreign corporation, in South Carolina for the alleged withholding of consulting wages in breach of a contract between the parties. *Id.* at *1. The plaintiff alleged that an individual, "on behalf of [the defendant] solicited Plaintiff to work and enhance the Defendant's business" in South Carolina. *Id.* at *3 (citation and internal quotation marks omitted). The court found that this fact did not demonstrate that the defendant "reached into the forum state to solicit or initiate business," *Consulting Eng'rs*, 561 F.3d at 278 (citation omitted), because, among other things, "there is no evidence that [the defendant] hired or considered hiring [the plaintiff] *because* he was a resident of South Carolina. In fact, the evidence suggests the exact opposite:  [the plaintiff]'s residence

played no role in [the defendant]'s decision to engage him and [the plaintiff] was free to live where he pleased." 2022 WL 16720115, at *4. Similarly, here Dr. Waseem neither alleges that the Stability Defendants recruited and hired him *because* he was a resident of Virginia, nor does he even allege they considered his residency in doing so. Instead, the parties contracted for Dr. Waseem to perform work for the Stability Defendants, and it so happened that he lived in Virginia. Thus, the Court concludes that the third factor weighs against the exercise of personal jurisdiction.

Although Dr. Waseem was to perform his contractual duties in Virginia, and the Stability Defendants knew this, Dr. Waseem's Virginia residency was random and not an indication of the Stability Defendants' purposeful conduct. *See, e.g.*, *Burger King*, 471 U.S. at 475 (explaining that the purposeful availment requirement is intended to ensure that the exercise of personal jurisdiction is not based on "random, fortuitous, or attenuated contacts"). Indeed, the amended complaint asserts that the Stability Defendants sought to hire Dr. Waseem based on his background and qualifications, rather than his residency and work venues. This differs from cases in which a defendant-employer deliberately directed contact with the forum state, such as through affirmatively recruiting an individual *because of* the state in which he or she lived, contracting to have an employee work in the forum state, and providing the employee with supplies to fulfill their employment responsibilities in the forum state.[9] *See, e.g.*, *Cossart v. United Excel Corp.*, 804 F.3d

---

[9] This key difference—the contours of the employment relationship between the parties—here distinguishes this case from those cited by Dr. Waseem. For example, in *English & Smith v. Metzger*, the defendant, a foreign corporation, contracted with the plaintiff in Virginia. 901 F.2d 36, 39 (4th Cir. 1990). The defendant initiated contractual negotiations by telephone and then later mailed a signed contract to the plaintiff, who signed it in Virginia. *Id.* The plaintiff then performed all contractual duties in Virginia. *Id.* The Fourth Circuit held that the exercise of personal jurisdiction over the defendant in Virginia was proper. *Id.* Unlike here, the parties in *English & Smith* did not have an employment relationship. Following *English & Smith*, many courts in this circuit have concluded that an employer is not subject to personal jurisdiction merely by employing remote employees in a state. *See, e.g.*, *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018) ("Plaintiff's choice to complete her work in North Carolina for her

13, 16–17 (1st Cir. 2015); *Stuart v. Churn LLC*, No. 1:19-cv-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019).

Moreover, "a single contract with an in-state entity will rarely establish 'significant' business activities in the forum state, particularly where the contract was with a single individual or entity and does not require continuing obligations between the defendant and other residents of the forum." *Berry*, 2022 WL 16720115, at *4 (citing *Pet Specialties, LLC v. Navisiontech, Inc.*, No. 1:18cv985, 2019 WL 4773623, at *5 (M.D.N.C. Sept. 30, 2019)). That is precisely the case here. Absent the limited additional contacts discussed below, the Stability Defendants' business activities in Virginia were overwhelmingly limited to discussing Dr. Waseem's work, and thus the performance of his contractual duties, while he was in Virginia.[10] To conclude that the fact that the parties contemplated that Dr. Waseem would perform his contractual duties in Virginia justifies the exercise of personal jurisdiction without any meaningful connection between his work and Virginia, would subject the Stability Defendants to the whims of Dr. Waseem. It would also impermissibly "allow[] a plaintiff's contacts with the defendant and forum to drive the

---

own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business [there]."), *aff'd*, 770 F. App'x 77 (4th Cir. 2019). This comports with the premise that the minimum contacts analysis is "flexible" and "proceeds on a case-by-case basis," considering the "qualitative nature of each of the defendant's connections to the forum state[,]" *Tire Eng'g*, 682 F.3d at 301–02.

[10] During the motions hearing before the Court, counsel for the Stability Defendants argued that Dr. Waseem "does not allege that the [Stability D]efendants had any contact with Virginia before he was here at the company or after." Tr. of Mots. Hr'g at 9:23–25 (Oct. 3, 2024); *see also id.* at 13:14–16 (noting that Dr. Waseem "has not alleged that the [Stability D]efendants had any connection to Virginia whatsoever either before or after his time there"). The Court also notes that Dr. Waseem alleges that he worked for the Stability Defendants for one year. Am. Compl. ¶ 1 ("From July 2020 through July 2021, Dr. Waseem served as Chief Scientific Officer of Stability AI[.]").

jurisdictional analysis." *Walden*, 571 U.S. at 289. Therefore, the Court finds that the eighth does not weigh in favor of the exercise of personal jurisdiction.

Dr. Waseem alleges that "[b]ecause of [his] residence in Virginia," the Stability Defendants "encouraged [him] to engage with local Virginia entities . . . to pursue a collaboration." Am. Compl. ¶ 7. Dr. Waseem's Virginia residency, however, was merely incidental to his employment relationship—he does not allege, for example, that the Stability Defendants sought to hire a Virginia-based employee, or that his residency would provide any unique benefit to them. *Perry*, 2020 WL 5759766, at *5 (concluding that there was no purposeful availment because, among other things, the plaintiff "ha[d] not alleged that [defendant] recruited her for her job because she resided in Maryland").

That the Stability Defendants contacted Dr. Waseem through email, messaging apps, and video conferences throughout the employment relationship while he was in Virginia does little to demonstrate that they reached into Virginia to initiate business or that they "deliberately engaged in significant or long-term business activities in [Virginia.]" *Consulting Eng'rs*, 561 F.3d at 278; *see, e.g.*, *Eagle Paper Int'l, Inc. v. Expolink, Ltd.*, No. 2:07cv160, 2008 WL 170506, at *5 (E.D. Va. Jan. 17, 2008) ("[I]t is well settled that mere telephone calls and electronic communications in furtherance of a transaction are insufficient to constitute purposeful activity." (citations omitted)); *New Venture Holdings, LLC v. Devito Verdi, Inc.*, 376 F. Supp. 3d 683, 695 (E.D. Va. Mar. 21, 2019) (noting that email "communications alone typically are insufficient to establish jurisdiction" (citation omitted)); *DeCusati v. Reiss Eng'g, Inc.*, No. 3:15cv204, 2015 WL 4622494, at *3 (E.D. Va. July 30, 2015) (finding "that the parties' telephone and Internet communication . . . alone do not suffice" to establish personal jurisdiction). Therefore, the seventh factor—"the nature, quality and extent of the parties' communications about the business being transacted," *Consulting Eng'rs*,

561 F.3d at 278 (citation omitted)—weighs against the exercise of personal jurisdiction over the Stability Defendants.

The Stability Defendants' use of Dr. Waseem's Virginia address as the "U.S. headquarters" superficially appears to be a closer call. Based on the facts alleged in the amended complaint, however, the Court concludes that it does not demonstrate purposeful availment. Dr. Waseem's Virginia address was listed on company bank accounts. Am. Compl. ¶ 16. Additionally, Dr. Waseem wrote dozens of grant proposals and applications, including for a United States Government Small Business Innovation Research ("SBIR") grant, a Health Data Research UK grant, a proposed AI project with the Saudi Arabian government, and a proposed project with the United Nations Development Programme, using his Virginia address. *Id.* ¶ 20. The Stability Defendants used the proceeds of the successful grant applications to "further develop . . . generative AI models, including generative imaging, and provide resources to other groups that were developing AI models." *Id.* ¶ 22. Separately, Dr. Waseem alleges more generally that the Stability Defendants "entered into contracts which listed Dr. Waseem's address for [their] address for all purposes under the contracts, including notices." *Id.* ¶ 7.

While Dr. Waseem argues now that "[m]any of the Stability Defendants' opportunities in this country depended on using the Virginia address," Pl.'s Mem. 11, the allegations in the amended complaint indicate only that the Stability Defendants purposefully availed themselves of the privilege of conducting business in the United States generally, rather than in Virginia specifically. *Carefirst of Md., Inc.*, 334 F.3d at 397 (noting that the relevant inquiry is "the extent to which the defendant has purposefully availed itself of the privilege of conducting activities *in the state*" (emphasis added)). For example, Dr. Waseem alleges that "the SBIR grant process required awardees to have a *continual place of business located in the United States (U.S.), and operate*

15

*primarily within the U.S.*" Am. Compl. ¶ 20 (emphasis added). More broadly, "many" of the grants that Dr. Waseem submitted applications for on behalf of the Stability Defendants "required applicants to maintain an address in the *United States*[.]" *Id.* (emphasis added). Similarly, Dr. Waseem does not allege that the Stability Defendants listed his Virginia address to maintain Virginia bank accounts, but "to maintain [*United States*] bank accounts." *Id.* ¶ 16. At bottom, the use of Dr. Waseem's address was significant because it was in the United States, rather than because it was in Virginia.

The "contacts" set forth above fail to demonstrate that the Stability Defendants deliberately engaged in "significant or long-term business activities" in Virginia—the fourth purposeful availment factor—or that they "reached into the forum state to solicit or initiate business[.]" *Consulting Eng'rs*, 561 F.3d at 278 (citation omitted); *see, e.g.*, *Universal Leather*, 773 F.3d at 560–61 (finding purposeful availment when the parties had a two-year relationship "that spanned a series of transactions and resulted in the sale of millions of dollars in goods," and defendant's employees solicited purchases in the forum state, and exchanged "frequent e-mail correspondence" regarding over $5 million dollars of transactions).

Lastly, the Court rejects Dr. Waseem's argument that his payment of company expenses, and the Stability Defendants' reimbursement of those expenses while he was in Virginia, supports the exercise of personal jurisdiction. Am. Compl. ¶ 7. This allegation does not demonstrate a connection between the Stability Defendants and Virginia, but only some connection between the Stability Defendants and Dr. Waseem.[11] *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No.

---

[11] Dr. Waseem also alleges that Stability AI, through him, contracted with a Virginia-based business to receive brand and design services. Am. Compl. ¶ 7. He does not allege, however, the extent of the Stability Defendants' involvement in the negotiation and execution of this contract, its purpose, or its importance to the company. *Burger King*, 471 U.S. at 479 (noting that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future

2:19cv324, 2019 WL 7593878, at *8 (E.D. Va. Nov. 14, 2019), *report and recommendation adopted*, 2020 WL 252993 (Jan. 16, 2020) (noting that "the Court must be careful to focus mainly upon the defendant's contacts with the forum, rather than the plaintiff's contacts or the defendant's contacts with persons who reside in the forum" (citing *Walden*, 571 U.S. at 284–85)).

The Stability Defendants' contacts with Virginia mostly begin and end with Dr. Waseem, which cannot be the basis on which due process is satisfied. *Walden*, 571 U.S. at 285 (requiring courts to "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). Therefore, the Court concludes that Dr. Waseem has not made a *prima facie* showing that the Stability Defendants purposefully availed themselves of the privilege of conducting business in Virginia. As such, the Court need not analyze the remaining requirements for specific personal jurisdiction. *Consulting Eng'rs*, 561 F.3d at 278.

## IV.  RECOMMENDATION

For all these reasons, the undersigned **RECOMMENDS** that: (a) the Stability Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, ECF No. 32, be **GRANTED**; (b) the Stability Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 32, be **DENIED AS MOOT**; and (c) this case be **DISMISSED** without prejudice.[12]

---

consequences which themselves are the real object of the business transaction[,]" and that "[i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum" (citation and internal quotation marks omitted)). The Court is thus not convinced that the Stability Defendants' single contract with a Virginia-based business to *receive* services, without more, demonstrates purposeful availment.

[12] The dismissal of a case for lack of personal jurisdiction is without prejudice because "such a dismissal does not dismiss the case on the merits." *Pandit v. Pandit*, 808 F. App'x 179, 183 n.3 (4th Cir. 2020).

## V.   **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
October 10, 2024

18