UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DR. TAYAB WASEEM,

      Plaintiff,

    v.                                     CIVIL NO. 2:24-cv-36

STABILITY AI, INC. and
STABILITY AI LTD.,

      Defendants.

## AMENDED OPINION[1]

This matter comes before the court on Plaintiff's Objections, ECF No. 45, to the Report and Recommendation ("R&R") of the Magistrate Judge, ECF No. 44, and Defendants' Response to those Objections, ECF No. 46. The R&R recommended granting Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 32, and denying as moot Defendants' Motion to Dismiss for Failure to State a Claim. See ECF No. 44 at 1. For the reasons set forth below, the court **OVERRULES** Plaintiff's objections, and **ADOPTS AND AFFIRMS IN FULL** the findings and recommendations in the R&R. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

---

[1] See infra notes 9 and 11 and accompanying text.

## I. FACTUAL AND PROCEDURAL HISTORY

This matter arises from Plaintiff's alleged employment with Stability AI,[2] a company which develops generative artificial intelligence ("AI") models. ECF No. 30 ¶¶ 14-18. Stability AI is a Delaware corporation with its principal place of business in London, England. Id. ¶¶ 4-5. Plaintiff is a Virginia citizen, who resided in Virginia at the time of the events giving rise to this dispute. Id. ¶ 3. The crux of Plaintiff's claim is that Stability AI has failed to deliver on its promise to grant him a ten (10) percent equity interest in the company as compensation for his employment. Id. ¶¶ 31-46.[3]

The action commenced on January 16, 2024, when Plaintiff filed a three-count Complaint against Stability AI's founder, Mohammad Emad Mostaque, Stability AI, Inc., and Stability AI Ltd. ("Defendants"). ECF No. 1. On May 20, 2024, Defendants filed a Motion to Dismiss, ECF No. 22, and an accompanying Memorandum in Support, ECF No. 23. On June 4, 2024, Plaintiff amended his Complaint under Federal Rule of Civil Procedure 15(a)(1)(B). ECF No. 30 (Amended Complaint). The Amended Complaint superseded the

---

[2] Plaintiff's Amended Complaint, ECF No. 30, refers only to "Stability AI" when discussing his employment with the company. The court elects to do the same.

[3] A more thorough rendering of Plaintiffs factual allegations can be found in the Magistrate Judge's R&R. See ECF No. 44 at 3-6.

initial Complaint and became the operative pleading. See <u>Young v. City of Mt. Ranier</u>, 238 F.3d 567, 572 (4th Cir. 2001). Plaintiff did not name Mr. Mostaque as a Defendant in his Amended Complaint. <u>See</u> ECF No. 30 at 1. Accordingly, Mr. Mostaque is no longer a Defendant to this action. <u>See</u> ECF No. 31 at 1-2.

The Amended Complaint alleges the following counts: Breach of Contract (Count I), Unjust Enrichment (Count II), and Quantum Meruit (Count III), each in the alternative to the other counts. ECF No. 30 ¶¶ 47-70. On June 18, 2024, Defendants filed a Motion to Dismiss the Amended Complaint ("Motion"), ECF No. 32, with an accompanying Memorandum in Support, ECF No. 33. In their Motion, Defendants seek dismissal of the Amended Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure, averring they are not subject to personal jurisdiction in Virginia. ECF No. 33 at 8-18. They also urge dismissal of Count I, Breach of Contract, and Count II, Unjust Enrichment, for failure to state a claim under Rule 12(b)(6). <u>Id.</u> at 18-23, 25-26. Lastly, Defendants urge the Court to "severely" limit Count III, Quantum Meruit. <u>Id.</u> at 25-27. On July 2, 2024, Defendant filed a memorandum in Opposition, ECF No. 34, to the Motion. Defendants filed their Reply, ECF No. 35, on July 8, 2024.

On August 2, 2024, the court referred the Motion to United States Magistrate Judge Robert J. Krask pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). <u>See</u> ECF

No. 38 (Referral Order). This designated him to "conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of this Motion to Dismiss[, ECF No. 32]." Id.

The Magistrate Judge conducted a hearing on Defendants' Motion on October 3, 2024. ECF Nos. 42 (Hearing Minutes); 43 (Hearing Transcript). A week later, on October 10, 2024, the Magistrate Judge filed an R&R recommending that Plaintiff's Motion to Dismiss for Lack of Personal Jurisdiction be granted. See ECF No. 44 at 1. The R&R further recommended that the Motion to Dismiss for Failure to State a Claim be denied as moot, and that the case be dismissed without prejudice. See id. The parties then had fourteen (14) days to file written objections to the R&R. See id. at 18. On October 24, 2024, Plaintiff filed his Objections, ECF No. 45, to which Defendant responded on November 6, 2024, ECF No. 46.

## II. Legal Standard

### A. Review of Magistrate Judge Report and Recommendation

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). For unchallenged portions, the court "must 'only satisfy itself that there is no clear error on the

4

face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

Objections to the R&R must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)). "Importantly, objections need not be novel to be sufficiently specific." Id. Accordingly, a party's objections may "merely restate[] all of [her] claims" raised before the Magistrate Judge. Id. (internal quotation marks omitted). However, objections must "respond to specific errors in the [R&R] because general or conclusory objections are not proper. General or conclusory objections are the equivalent of a waiver." Scott v. Va. Port Auth., 2018 WL 1508592, at *2 (E.D. Va. Mar. 27, 2018) (Jackson, J.) (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)).

## B. Personal Jurisdiction: Pleading Standard

Federal Rule of Civil Procedure 8(a)(1) requires a plaintiff's pleading to make "a short and plain statement of the grounds for the court's jurisdiction." The plaintiff must allege

"the facts essential to show jurisdiction." McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). At the present stage of litigation, in which the court rules solely on the parties' written submissions, the plaintiff "need only make a prima facie showing of personal jurisdiction." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016). Moreover, "when considering a motion to dismiss under Rule 12(b)(2) at such a preliminary stage . . . [the court] give[s] plaintiff's allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff." Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd., 911 F.3d 192, 196 (4th Cir. 2018) (citing Grayson, 816 F.3d at 268).

### III. ANALYSIS

Plaintiff's Objections, ECF No. 45, boil down to a single issue—whether the Magistrate Judge correctly found that the Defendants did not purposefully avail themselves of the privileges of doing business in Virginia, such that the court lacks personal jurisdiction over Defendants. See id. at 6. Plaintiff contends the Magistrate Judge misapplied the relevant caselaw, giving supportive cases "short shrift" and failing to distinguish the matter from "simple remote worker case[s]." Id. at 10. The court will give an overview of the legal framework at play, and address Plaintiff's objections in turn.

## A. Personal Jurisdiction: Substantive Standard

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). The requirements for personal jurisdiction are two-fold: (1) jurisdiction must be "authorized by the long-arm statute of the state in which the district court sits;" and (2) "application of the relevant long-arm statute [must be] consistent with the Due Process Clause of the Fourteenth Amendment." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). "Virginia's long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 350-51 (4th Cir. 2020). Consequently, "the statutory inquiry merges with the constitutional inquiry." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009).

Under the Due Process Clause, courts have identified "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 358 (2021) (citation omitted). In the

context of a corporation, general jurisdiction exists when "the corporation is fairly regarded as at home" in the forum state. Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 256 (2017) (citation omitted). In contrast, specific jurisdiction "permits suits that 'arise out of or relate to' a corporate defendant's activities in the forum State." Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 137 (2023) (cleaned up) (citation omitted).

In assessing whether specific jurisdiction exists, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Universal Leather, 773 F.3d at 559 (alteration in original) (citing Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012)). Only if the first requirement—commonly referred to as "purposeful availment"—is met do courts address the latter two. See Consulting Eng'rs, 561 F.3d at 278.

Purposeful availment "concerns whether and to what extent 'the defendant purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state.'" UMG Recordings, 963 F.3d at 353 (alteration in original) (quoting Consulting Eng'rs, 561 F.3d at 278). This inquiry is "not

susceptible to a mechanical application," id. at 352, and instead "proceeds on a case-by-case basis." Tire Eng'g, 682 F.3d at 302. Even so, courts have identified several non-exclusive factors as bellwethers for purposeful availment. These include: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum." Universal Leather, 773 F.3d at 560 (citing Consulting Eng'rs, 561 F.3d at 278).

While the factors are helpful, at bottom, the question remains whether "the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." Sneha Media, 911 F.3d at 198 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). This deceptively simple

question frames the sole issue before the court.

## B. Application of Supportive Cases

Plaintiff argues that the Magistrate Judge failed to correctly apply three cases to the instant matter: English & Smith v. Metzger, 901 F.2d 36 (4th Cir. 1990); Brian Wishneff & Assocs. v. 10 S. St. Assocs., LLC, 2016 WL 627358 (W.D. Va. Feb. 16, 2016); and New Venture Holdings, LLC v. DeVito Verdi Inc., 2020 WL 6866563 (E.D. Va. Jan. 7, 2020) (Davis, C.J.). In assessing the applicability of these cases, the court notes that district court decisions are persuasive, but not binding authority. Accordingly, the court elects to first examine the sole binding precedent, English & Smith, from the Fourth Circuit.

## 1. Binding Precent: English & Smith

In English & Smith, the court found that Virginia had personal jurisdiction over a California lawyer who allegedly breached a contract with a Virginia lawyer. See 901 F.2d at 37, 40. The case arose after the California lawyer sought out the Virginia lawyer for his expertise on forfeiture law. See id. at 37. Under the arrangement, each lawyer worked entirely within their respective state. See id. Consequently, the California lawyer was never physically present in Virginia. See id. at 39. Even so, the court found that the California lawyer had purposefully availed himself to Virginia. In making this finding, the court stressed that the California lawyer: (1) "initiated contact with [the Virginia

10

lawyer]," (2) "entered into contracts with [the Virginia lawyer]" and (3) "carried on a continuing relationship with [the Virginia lawyer]" while the two worked on a case. See id. at 39–40.

Plaintiff cites this case for the proposition that deliberate availment is met when: "the defendant reached out to Virginia to form a business relationship with the plaintiff; all of plaintiff's work was performed in Virginia; and, the parties engaged in numerous calls and letters between [the defendant's state] and Virginia over the course of the next year." ECF No. 45 at 10. While these were indeed the facts of English & Smith, Plaintiff gleans from them a rule that is both too broad and contradicted by controlling precedent.

As an initial matter, the Fourth Circuit has expressly rejected a "bright-line rule" that "all contracts creating continuing obligations with a party in the forum state require a finding of purposeful availment." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 191 (4th Cir. 2016). While this holding chips away at support for Plaintiff's rule, Sneha Media delivers the coup de grâce. In Sneha Media, the Fourth Circuit endorsed Moncrief Oil, a Fifth Circuit case finding "that a decision to contract with a resident of the forum state did not establish personal jurisdiction, even though the resident foreseeably performed many of its duties there, in part because the contract was centered outside the forum and did not require performance in the forum by

11

the defendant." Sneha Media, 911 F.3d at 200 (citing Moncrief Oil Int'l, Inc. v. OAO Gazprom 481 F.3d 309, 312-13 (5th Cir. 2007)). The parties in Moncrief Oil also engaged in frequent communication, which the court found insignificant for purposes of personal jurisdiction. See 481 F.3d at 312. All this is to show that the Fourth Circuit has endorsed a case in which all three tenets of Plaintiff's proposed rule were present-contracting, communication, and performance; each either occurring within the forum state or directed at a plaintiff residing in the forum state-but the court nonetheless did not find personal jurisdiction. This not only refutes Plaintiff's proposed rule, but demonstrates why "personal jurisdiction cannot 'turn on mechanical tests.'" Perdue Foods, 814 F.3d at 191 (quoting Burger King, 471 U.S. at 478).

The relationship between the parties in English & Smith further distinguishes the case from the instant matter. English & Smith concerned a business-to-business relationship between a law firm and a solo practitioner. See 901 F.2d at 37. This differs in kind from the employee-employer relationship in this case. This is because the parties' locations are often an important consideration when forming a business-to-business contract, while a remote worker's residency is more often a personal choice incidental to the employment relationship.[4] To allow the latter to

_____

[4] Brian Wishneff, 2016 WL 627358, a case cited by Plaintiff, illustrates this point. See infra Section III.A.2. at 14-15.

drive the court's analysis would violate the principle that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State[.]" Helocopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 417 (1984).

The court is in good company in finding that English & Smith does not bind its hands in the remote work context. In five cases from this circuit finding that a remote employee's residence did not subject their employer to personal jurisdiction in the forum state, the court did not reference English & Smith, much less find it was dispositive to the issue of purposeful availment. See Jones v. Westmount Asset Mgmt. Inc., 2024 WL 4505012 (D. Md. Oct. 16, 2024); OSRX Inc. v. Anderson, 2023 WL 2472417 (D.S.C. Feb. 7, 2023); Clarke v. Tango Networks, Inc., 2021 WL 6095328 (S.D.W. Va. Dec. 23, 2021); Perry v. Nat'l Ass'n of Home Builders of United States, 2020 WL 5759766 (D. Md. Sept. 28, 2020); Fields v. Sickle

_____

However, this is only a general rule. In some remote work cases, the employee's location was relevant to the employment relationship, prompting the court to find that the employer purposefully availed itself to the employee's state. See e.g., Hall v. Rag-O-Rama, LLC, 359 F. Supp. 3d 499, 510 (E.D. Ky. 2019) (finding purposeful availment where, inter alia, "[n]ot only was [the employer] knowledgeable of Plaintiff's desire to work from Kentucky, but her doing so was specifically bargained for in the negotiation of the employment contract."). The instant matter is not one of those cases, as Plaintiff's Virginia residency was incidental to his employment with Stability AI. See infra Section III.C. at 19-20.

Cell Disease Ass'n of Am., Inc., 376 F. Supp. 3d 647 (E.D.N.C. 2018). Moreover, the Fourth Circuit has affirmed Fields without reference to English & Smith, albeit in an unpublished and nonbinding opinion.[5] See Fields v. Sickle Cell Disease Ass'n of Am., Inc., 770 F. App'x 77 (4th Cir. 2019). For this reason in addition to those stated above, the court finds that English & Smith does not dictate the outcome of this case.

### 2. Non-Binding Precedent: Brian Wishneff and New Venture Holdings

While neither Brian Wishneff nor New Venture Holdings are binding precedent, the court elects to address them briefly. Plaintiff cites Brian Wishneff for the proposition that an out-of-state "defendant's email and telephone correspondence with the plaintiff, combined with the defendant's knowledge that the plaintiff would perform its work in Virginia, were sufficient to support the exercise of personal jurisdiction over the defendant." ECF No. 45 at 9. Much like English v. Smith, Brian Wishneff is distinguishable in that it concerned two businesses: a consulting firm and a real estate development company, rather than a remote employee and their employer. See 2016 WL 627358, at *2.

Moreover, the rationale for this distinction—that residency is generally more important to a party entering a business contract

---

[5] The court notes that OSRX Inc., 2023 WL 2472417, is currently on appeal at the Fourth Circuit. See Case No. 23-1252, ECF No. 1.

than it is to an employer hiring a remote employee—informed the court's reasoning in Brian Wishneff. The court found it significant that the defendant "expressed skepticism regarding" the plaintiff's "ability to perform its services in Virginia," but acquiesced to the arrangement after plaintiff assured them the work could be performed in Virginia. Id. at *5. This showed that plaintiff's location was not "random, fortuitous, or attenuated," but rather a negotiated aspect of the parties' business relationship that the defendant considered in choosing to contract with the plaintiff. This makes it more appropriate that defendant "should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). In contrast, Plaintiff's Virginia residency was "merely incidental" to his employment with Stability AI. ECF No. 44 at 14. Accordingly, even when considered as persuasive authority, Brian Wishneff cuts no ice with the court, and does not favor a finding of personal jurisdiction in this case.

Plaintiff cites New Venture Holdings for the proposition that there is specific jurisdiction where the parties "envision[ed] that significant performance of the contract would occur in Virginia." ECF No. 45 at 10 (citing New Venture Holdings, 2020 WL 6866563, at *5). Again, Plaintiff's rule is overbroad. Performance under a contract in the forum state is merely a factor courts consider; it is not dispositive. See Transact Cap. Partners, LLC

15

v. Alt. Staffing Inc., 2023 WL 5167006, at *9 (E.D. Va. July 15, 2023) (Speight, J.) ("In actions arising out of a contract dispute, the place of contract negotiation, execution, and performance are all relevant, but not dispositive."); see also Sneha Media, 911 F.3d at 200 (citing Moncrief Oil, 481 F.3d at 312-13)). Accordingly, neither New Venture Holdings nor Brian Wishneff, insofar as Plaintiff relies on them, are persuasive in this case.

### C. Application of Remote Work Cases

Plaintiff objects to the Magistrate Judge's application of within-circuit cases finding that the employment of a single remote employee residing in the forum state, without more, does not show that the employer purposefully availed itself to the forum state.[6] Plaintiff argues that "[his] case is far from a simple remote worker case." ECF No. 45 at 10. To this effect, Plaintiff cites

---

[6] District courts in every federal circuit, except the District of Columbia, which does not appear to have yet addressed the issue, have endorsed this rule. See Jones v. Westmount Asset Mgmt., 2024 WL 4505012, at *2 (D. Md. Oct. 16, 2024); Baton v. Ledger SAS, 2024 WL 3447511, at *20 (N.D. Cal. July 16, 2024); Concord Music Grp., Inc. v. Anthropic PBC, 2024 U.S. Dist. LEXIS 110598, at *15 (M.D. Tenn. June 24, 2024); Higgins v. Newsmax Broad. LLC, 2024 WL 3064844 at *6 (D.N.J. June 20, 2024); Parks v. Loadstop, Inc., 2024 U.S. Dist. LEXIS 186582, at *14 (S.D. Tex. Apr. 22, 2024); Behrendt v. UnitedLex Corp., 2023 WL 7329538, at *2 (W.D. Mo. Aug. 10, 2023); Esslinger v. Endlink, LLC, 2023 U.S. Dist. LEXIS 101329, at *16 (N.D. Ga. Apr. 13, 2023); Schlechtweg v. Celularity, Inc., 2022 WL 541507, at *9 (D. Conn. Feb. 23, 2022); Martinez v. N. Arizona Univ., 553 F. Supp. 3d 908, 919 (D.N.M. 2021); Schenk v. Knightscope, Inc., 2018 WL 1726425, at *3 (N.D. Ill. Apr. 10, 2018); Bertolini-Mier v. Upper Valley Neurology Neurosurgery P.C., 2017 WL 4081901, at *5 (D. Vt. Sept. 13, 2017).

several distinguishing facts: (1) the Defendants used Plaintiff's Virginia address to maintain bank accounts, apply for grants, and enter into contracts, such that his address operated as the company's "U.S. Headquarters"; (2) the Defendants encouraged Plaintiff to pursue collaboration with local Virginia entities, including with the CEO of the Medical Society of Virginia; (3) the Defendants, through Plaintiff, "entered into a contract with a Virginia-based business to provide Defendants with brand and design services"; (4) Plaintiff loaned the Defendants personal funds from his residence in Virginia; and (5) Plaintiff's position as the company's Chief Scientific Officer. See ECF Nos. 30 ¶ 7; 45 at 10-11.

In assessing whether Plaintiff's situation is distinguishable from the mine-run of remote worker cases, the court bears in mind that "the relationship among the defendant, the forum, and the litigation must arise out of contacts that the 'defendant himself' creates with the forum and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing their." Walden v. Fiore, 571 U.S. 277, 278 (2014) (cleaned up) (citations omitted). Facts (2), (3), and (4) exemplify the latter, as they show contact between Defendants and Plaintiff, but not Defendants and Virginia. Plaintiff does not allege that Defendants loaned him money, instructed him to engage with local entities or to contract with a company for design services, because

either he, the company, or the local entities, were in Virginia. That each action occurred in Virginia or involved a Virginia entity was a "fortuitous" consequence of Plaintiff's Virginia residency. Burger King, 471 U.S. at 476. This was not a purposeful effort on the part of Defendants to do business in Virginia.[7] Cf., Weisner v. FLIR Sys., Inc., 2019 WL 4962594, at *4 (E.D.N.C. Oct. 7, 2019) (finding that plaintiff's allegations that defendant solicited plaintiff's employment, required him to complete pre-employment tasks, and sent direct deposits to his bank account—all with the knowledge that plaintiff was in North Carolina at the time and that his bank account was registered with a North Carolina address— "are insufficient [to establish personal jurisdiction] because they are simply incidental to [Plaintiff] being a North Carolina resident"). Accordingly, these facts do not show that Defendants "purposefully avail[ed] [themselves] to the privilege of conducting business under the laws of the forum state." Consulting Eng'rs, 561 F.3d at 278 (emphasis added).

Plaintiff's reference to his job title and importance within the company are similarly unavailing. Other courts have applied this circuit's remote work cases to high-level employees without reservation. See Esslinger v. Endlink, LLC, 2023 WL 3931505, at *6

---

[7] Defendants' unchallenged assertion that "plaintiff does not allege that the defendants had any contact with Virginia before he was at the company or after," strengthens this conclusion. See ECF No. 43 at 9.

(N.D. Ga. Apr. 13, 2023) ("[Plaintiff's] decision to work from Georgia was unilateral and purely incidental to his work as CEO[.]" (citing Fields, 376, F. Supp. 3d at 653)). As the Magistrate Judge noted, Plaintiff was given such an important role due to his "background and qualifications, rather than his residency and work venues." ECF No. 44 at 12; cf. Stuart v. Churn LLC, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding that defendant "purposefully availed itself of doing business in North Carolina" because it "knew that [plaintiff] was working to expand their business to North Carolina and meeting with potential distributors here"). Accordingly, Plaintiff's role within the company is "purely incidental" to his Virginia residency, and does not show that Defendants purposefully availed themselves to the privilege of doing business in Virginia.

This leaves only Plaintiff's allegation that Defendants used Plaintiff's Virginia address to maintain bank accounts, apply for grants, and enter into contracts, such that Plaintiff's address functioned as their "U.S. headquarters." See ECF Nos. 30 ¶ 7; 44 at 11-12. As the Magistrate Judge correctly notes, while this "superficially appears to be a closer call," it "indicate[s] only that Defendants purposefully availed themselves of the privilege of conducting business in the United States generally, rather than

Virginia specifically."[8] ECF No. 44 at 15. In each instance, Defendant derived a benefit from Plaintiff's United States address; that this address also happened to be in Virginia was "fortuitous." Burger King, 471 U.S. at 476; see ECF No. 30 ¶¶ 16, 20. Nowhere does Plaintiff allege that Defendants used a Virginia address for any reason germane to Virginia. Cf. Gov't of Lao People's Democratic Republic v. Baldwin, 2022 WL 2047825, at *9 (D. Idaho Jun. 7, 2022) ("[Defendant's] use of forum bank accounts is not purposeful: there is no allegation that [Defendant] used an Idaho bank account for any particular reason."). Accordingly, this

---

[8] The Supreme Court's "stream of commerce" cases illustrate this principle—that one must avail oneself to the forum state specifically, not merely the United States at large. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 886 (2011) ("Here the question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant."); Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112 (1987) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."). Courts in this circuit have embraced this approach. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (finding that defendant did not avail itself to South Carolina, but rather "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina"); Williams v. Romarm, 2016 U.S. Dist. LEXIS 136335, at *9 (D. Md. Sept. 30, 2016) (finding that "it is insufficient to show that the defendant purposefully availed itself of the United States as a whole"); Madden v. Petland Summerville, LLC, 2021 WL 288370, at *5 (D.S.C. Jan. 28, 2021) (finding that "marketing efforts broadly directed at the United States and internationally do not show [defendant's] intent to avail itself of the privilege of conducting activities in South Carolina").

set of allegations fails to distinguish the present action from the abundance of persuasive authority holding that employing a remote worker in the forum state, without more, does not subject an employer to personal jurisdiction in that state. See supra note 5.

### IV. CONCLUSION

For the reasons stated above, and having reviewed the record in its entirety and conducted a de novo review of those portions of the R&R to which Plaintiff objected, the court hereby **OVERRULES** Plaintiff's Objections, ECF No. 45, and **ADOPTS AND APPROVES IN FULL** the findings and recommendations set forth in the Magistrate Judge's R&R, filed on October 10, 2024, ECF No. 44. Accordingly, Defendants'[9] Motion to Dismiss for Lack of Jurisdiction, ECF No. 32, is **GRANTED**, and this matter is **DISMISSED WITHOUT PREJUDICE**.[10]

The Clerk is **DIRECTED** to enter judgment in favor of Defendants[11] and close the case on this court's docket. The Clerk

---

[9] Pursuant to the court's Correction Order, ECF No. 49, "Plaintiff's" is corrected to "Defendants'."

[10] "[A] dismissal for lack of personal jurisdiction must be without prejudice." Zhang v. Bonomolo, 2024 WL 4524527, at *1 (4th Cir. Oct. 18, 2024) (citing Atkisson v. Holder, 925 F.3d 606, 628 (4th Cir. 2019)).

[11] Pursuant to the court's Correction Order, ECF No. 49, "Plaintiff" is corrected to "Defendants."

is further **DIRECTED** to send a copy of this Amended Opinion to counsel for all parties.

    **IT IS SO ORDERED.**

                                     /s/

                                     Rebecca Beach Smith
                                     Senior United States District Judge

                               REBECCA BEACH SMITH
                       SENIOR UNITED STATES DISTRICT JUDGE

December 19, 2024